# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**PAULA PYRILIS, individually and on behalf of other similarly situated employees of Defendants**
**MARC DEMOTT, individually and on behalf of other similarly situated employees of Defendants**

Plaintiffs,

v.

**DREAM CONCEPTS, LLC, a Colorado limited liability corporation,**
**ORDERUP INC., a Maryland Corporation,**
**GROUPON, INC., a Deleware Corporation, and**
**JEFF MARCUS**

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Paula Pyrilis and Marc DeMott are delivery drivers for Defendants who operate "OrderUp". OrderUp is a service that allows hungry consumers to buy food from a number of restaurants through an app on the consumer's phone. OrderUp's drivers then pick up the food from the restaurant and deliver it to the consumer.

Plaintiffs and similarly situated drivers are economically reliant on OrderUp. To receive and be paid for deliveries, drivers must use a mobile app that OrderUp provides. Drivers must wear OrderUp uniforms. OrderUp sets drivers' work schedules. When a driver rejects shifts that OrderUp schedules, Order Up disciplines the driver by assigning fewer hours on future schedules or terminating the driver's employment.

Instead of paying wages in compliance with state and federal law, OrderUp classifies its drivers as independent contractors. OrderUp does not pay its drivers a lawful minimum wage or over time under the Fair Labor Standards Act of 1938, 29 U.S.C. § 203 ("FLSA"), the Colorado Wage Act, C.R.S. §§ 8-4-101, *et seq.* ("CWCA"); and Colorado Minimum Wage Order, 7 C.C.R. § 1103-1 ("Minimum Wage Order") (CWCA and Minimum Wage Order are referred to collectively as "Colorado Wage Laws"). OrderUp is violating the FLSA, CWCA, and the Minimum Wage Order by failing to pay Plaintiffs and the similarly situated drivers minimum wage and overtime pay.

Additionally, OrderUp permitted a customer to expose his genitals to Plaintiff Pyrilis on several occasions, even after Pyrilis complained about the customer. Following her complaints, instead of exercising any care to prevent further harassment, OrderUp retaliated against Pyrilis by giving her fewer hours and less lucrative deliveries. For their complaint, Plaintiffs state as follows:

## PARTIES

1. Plaintiff Paula Pyrilis is an individual who resides in Larimer County, Colorado.

2. Plaintiff Marc DeMott is an individual who resides in Larimer County, Colorado.

3. Attached as Exhibit 1 are the Consent to Join forms signed by Plaintiffs Pyrilis and DeMott under Section 16(b) of FLSA, 29 U.S.C. § 216(b). It is likely other individuals will sign consent forms and join as plaintiffs on this claim in the future.

4. Dream Concepts, LLC is a Colorado Limited Liability Company whose principal place of business is in Larimer County, Colorado.

5. Upon information and belief, Dream Concepts, LLC does business as OrderUp Northern Colorado.

6. Upon information and belief, Dream Concepts, LLC is the Colorado franchisee of OrderUp, Inc.

7. OrderUp, Inc. is a corporation with its principal place of business in Maryland. OrderUp, Inc. is a subsidiary of Groupon, Inc.

8. Groupon, Inc. is a Delaware corporation with its principal place of business in Illinois.

9. Jeff Marcus is an individual residing in and domiciled in the District of Colorado.

10. Defendant Marcus is the owner of Defendant Dream Concepts, LLC and was at all relevant times Plaintiffs' and the similarly situated drivers' employer under 29 U.S.C. § 203(d).

11. At all relevant times through Plaintiffs and similarly situated drivers' employment, Defendant Marcus had authority to hire and fire employees, supervised and controlled work schedules and the conditions of employment, determined with the other Defendants the rate and method of payment of wages, and maintained employment records in connection with Plaintiffs' and other drivers' employment with Defendants. As a person who acted in the interest of Defendant Dream Concepts, LLC in relation to the company's employees, Defendant Marcus is subject to individual liability under the FLSA.

12. From March 2016 to present, Defendants employed Plaintiff Pyrilis as a delivery driver.

13. From February 2016 to present Defendants employed Plaintiff DeMott as a delivery driver.

14. At all material times, Plaintiffs were employees of Defendants under 29 U.S.C. § 302(e)(1) and were non-exempt employees under 29 U.S.C. § 213(a)(1).

15. Plaintiffs did not exercise any managerial control that affected an opportunity for profit or loss.

16. At all material times, Defendants were Plaintiffs' and similarly situated drivers' "employer" under 29 U.S.C. § 203(d). Defendants are all joint employers of Plaintiffs and similarly situated drivers.

### JURISDICTION AND VENUE

17. Plaintiffs bring this action under FLSA and Colorado Minimum Wage Law.

18. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 201, et seq., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under state law.

19. The Court has personal jurisdiction over Dream Concepts, LLC as its principal place of business is in Larimer County, Colorado.

20. The Court has personal jurisdiction over OrderUp, Inc. and Groupon, Inc. because each of them is transacting business in Colorado as defined in C.R.S. § 13-1-124.

21. Venue is proper in this District under 28. U.S.C. § 1391 as Dream Concepts, LLC's principal place of business is in Colorado.

### COVERAGE UNDER FLSA AND THE MINIMUM WAGE ORDER

22. At all material times, Defendants operated as a "single enterprise" under 29 U.S.C. § 302(r)(1). Defendants perform related activities through unified operation and common control for a common business purpose: the operation of restaurant delivery services in Northern Colorado.

23. Defendants are engaged in all related activities, which are necessary to the operation of the delivery services.

24. Defendants are a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

25. Defendants represent themselves to the public through their website as one delivery service company – OrderUp – operating delivery services in Northern Colorado. A member of the public in Northern Colorado can use www.orderup.com to order food from restaurants, which

is delivered by employees of Defendants. As of April 2018, the "ordering page" for persons in Fort Collins or other parts of Northern Colorado shows a photo of Defendant Marcus.

26. Defendants share payroll and information technology services.

27. Upon information and belief, each Defendant is an enterprise under FLSA as they each make more than $500,000 in revenue a year.

28. Plaintiffs and similarly situated drivers are individually covered by FLSA as they are engaged in interstate commerce by driving in Colorado for entities located outside of Colorado and are paid by and controlled by those entities.

29. Plaintiffs and similarly situated drivers are covered by Colorado's Minimum Wage Order as they work in the retail and service, commercial support service, and food and beverage industries.

**ALLEGATIONS**
**PYRILIS AND DEMOTT'S EMPLOYMENT WITH ORDERUP**

30. Plaintiff Pyrilis began working as a delivery driver for OrderUp on March 12, 2016.

31. Plaintiff DeMott began working as a delivery driver for OrderUp in February 2016.

32. Since they began driving for OrderUp, Plaintiffs have not had other jobs but have only worked for OrderUp.

33. Economically, Plaintiffs are totally reliant on OrderUp.

34. Before Plaintiffs were allowed to make deliveries for OrderUp, they had interviews with Defendant Marcus, owner of Dream Concepts.

35. After Defendant Marcus hired Plaintiffs, he gave them a five-page document of rules related to their employment at OrderUp.

36. The document includes rules about behavior, uniform, equipment to be used, and availability.

37. The rules require drivers to display commitment, reliability, customer service, and communication.

38. The document also states that OrderUp will provide drivers with delivery orders and the tools needed to complete those orders.

39. The document also states that drivers must provide their availability to be scheduled and that OrderUp would set their actual schedules. It also states that once the schedule is set, each driver must ensure their shifts are covered. The document warns that rejecting assigned shifts would result in termination of the driver's services.

40. OrderUp further warned Drivers that every interaction must demonstrate the highest quality of customer service, whether this interaction is with a restaurant, customer, fellow commuter, fellow driver dispatcher, manager, or any person. OrderUp further advised drivers that complaints about driving, personality or any of the materials covered in OrderUp's guidelines would result in write ups.

41. Regarding appearance standards, OrderUp told drivers that they must wear a uniform, maintain well-groomed hair, and demonstrate acceptable personal hygiene.

42. OrderUp also stated that drivers could improve their reliability rating by demonstrating commitment to OrderUp.

43. When drivers have a problem, OrderUp encourages them to contact OrderUp to resolve those problems.

44. Plaintiffs are paid by direct deposit once per week. Each deposit memo states that the deposit is received from "GROUPON PAYMENTS 55689985 CCD ID: 3270903295."

45. Plaintiffs were to be paid 90% of each delivery fee plus tips.

46. OrderUp reserved the right to revoke pay and/or tips for failing to meet expectations.

6

47. Each week, Plaintiffs receive paystubs showing the number of deliveries, the total delivery fees, OrderUp's referral royalties, the driver rewards, the tips, and the total driver earnings for each day of the week. These paystubs come from pay@orderup.com and read "2010-2018 OrderUp® Inc. All rights reserved." at the bottom of the email.

48. OrderUp does not reimburse Plaintiffs for expenses they incur in the course and scope of their employment at OrderUp. Specifically, it did not reimburse them for fuel or mileage on their personal cars they use for their work for OrderUp. Mileage on the cars and fuel for the cars were expended for OrderUp's primary benefit while Plaintiffs were driving for OrderUp.Under FLSA and CWCA, Plaintiffs were employees of OrderUp and each defendant jointly.

49. OrderUp improperly classified Plaintiffs as independent contractors instead of as employees.

**PLAINTIFFS' AND CLASS MEMBERS' HOURS AND PAY FROM ORDERUP**

50. At all relevant times, the federal minimum wage was $7.25 per hour and $2.13 for employees who are validly classified as tipped employees.

51. In 2015, Colorado's minimum wage was $8.23 per hour and $5.21 for employees who are validly classified as tipped employees.

52. In 2016, Colorado's minimum wage was $8.31 per hour and $5.29 for employees who are validly classified as tipped employees.

53. For the week starting April 18, 2016, Pyrilis worked 49 hours and 30 minutes, but only earned $275.62 before tips, which is an hourly wage of $5.57. For this week, Defendants paid Pyrilis no overtime.

54. For the week starting April 25, 2016, Pyrilis worked 59.1 hours. For the week starting May 23, 2016, Pyrilis worked 56.5 hours. For the week starting September 12, 2016, Pyrilis worked

58.5 hours. Pyrilis worked many other weeks in 2016 where her hours worked exceeded 40. Defendants never paid Pyrilis overtime for hours exceeding 40 in any given week.

55. For the week starting August 15, 2016, DeMott worked 23 hours and 46 minutes, but only earned $129.28 before tips, which is an hourly wage of $5.44.

56. In 2017, Colorado's minimum wage was $9.30 per hour and $6.28 for employees who are validly classified as tipped employees.

57. For the week starting July 3, 2017, Pyrilis worked 45 hours and 9 minutes, but only earned $287.28 before tips, which is an hourly rate of $6.36. For this week, Defendants paid Pyrilis no overtime.

58. For the week starting February 20, 2017, Pyrilis worked 50.7 hours. For the week starting March 6, 2017, Pyrilis worked 54.26 hours. For the week starting August 14, 2017, Pyrilis worked 43.4 hours. Pyrilis worked many other weeks in 2017 where her hours worked exceeded 40. Defendants never paid Pyrilis overtime for hours exceeding 40 in any given week.

59. On December 16, 2017, DeMott worked 5 hours and 59 minutes, but only earned $17.95 before tips, which is an hourly wage of about $2.99.

60. In 2018, Colorado's minimum wage was $10.20 per hour and $7.18 for employees who are validly classified as tipped employees

61. On March 13, 2018, Pyrilis worked 8 hours and 32 minutes, but only earned $40.40 before tips, which is an hourly rate of about $4.75.

62. For the week starting January 1, 2018, DeMott worked 15 hours and 54 minutes, but only earned $105.94 before tips, which is an hourly rate of about $6.66.

63. For the week starting March 19, 2018, Pyrilis worked 41.31 hours. For the week starting March 12, 2018, Pyrilis worked 45.48 hours. For the week starting February 5, 2018, Pyrilis worked 45.62 hours. Pyrilis worked many other weeks in 2018 where her hours worked exceeded 40. Defendants never paid Pyrilis overtime for hours exceeding 40 in any given week.

64. Due to their improper classification as independent contractors, Defendants never informed Plaintiffs and similarly situated drivers about FLSA's tip credit provisions. Accordingly, Plaintiffs and similarly situated drivers were not validly classified as tipped employees.

65. Due to OrderUp's representation that OrderUp could revoke tips, Plaintiffs and similarly situated drivers were not validly classified as tipped employees.

66. After deductions for mileage and other expenses that were primarily for the benefit of OrderUp, Plaintiffs and Class Member's pay was below the Colorado and the Federal minimum wages.

67. Accordingly, OrderUp violated the minimum wage provisions of FLSA and Colorado Minimum Wage Law.

68. Plaintiffs and similarly situated drivers were not paid one-and-a-half times their regular rate of pay for hours worked in excess of 40 hours in a single work week.

69. Plaintiffs and similarly situated drivers worked more than 40 hours in a single work week.

70. Accordingly, OrderUp violated the overtime provisions of FLSA and Colorado Minimum Wage Law.

## COLLECTIVE ACTION ALLEGATIONS

71. Plaintiff Pyrilis brings the first and second FLSA claims in this action as a collective action under 29 U.S.C. § 216(b). Plaintiff DeMott brings the second FLSA claim in this action as a collective action under 29 U.S.C. § 216(b).

72. Plaintiffs assert those claims on behalf of themselves and on behalf of all similarly situated persons who have worked as delivery drivers for OrderUp at any time from April 27, 2015 to the present for Defendants in Northern Colorado performing restaurant delivery services using the OrderUp mobile app ("Collective Members").

73. Plaintiffs seek to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

**All individuals who worked for OrderUp at any time from May 10, 2015 to the present for Defendants in Northern Colorado performing restaurant delivery services using the OrderUp mobile app.**

74. On information and belief, Defendants have employed over one hundred such employees during the period relevant to this action.

75. The identities of these employees are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiffs, joinder of each member is not practicable.

76. Because these similarly situated employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it under 29 U.S.C. § 216(b).

77. Collective adjudication is appropriate in this case because the employees whom Plaintiffs wish to notify of this action have been employed in the same or similar positions to Plaintiffs, have performed work similar to Plaintiffs, and have been subject to compensation practices similar to those to which Plaintiffs were subjected, including unlawful payment of sub-minimum wages and failure to pay overtime.

## COLORADO CLASS ACTION ALLEGATIONS

78. Plaintiffs bring their third and fourth Claims for Relief, Colorado claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others who have worked for Defendants in Colorado on or after May 10, 2015 and the date of final judgment in this matter (the "Colorado Rule 23 Class").

79. Excluded from the Colorado Rule 23 Class are Defendants, Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Colorado Rule 23 Class.

80. The members of the Colorado Rule 23 Class are so numerous that joinder of all members is impracticable.

81. Upon information and belief, the size of the Colorado Rule 23 Class is at least 100 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within Defendants' sole control.

82. Defendants have acted or have refused to act on grounds generally applicable to the Colorado Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Colorado Rule 23 Class as a whole.

83. Common questions of law and fact exist as to the Colorado Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

    (a)     whether Defendants violated the Colorado Wage Laws;

(b)      whether Defendants failed to compensate Plaintiffs and the Colorado Rule 23 Class for hours worked in excess of 40 hours per workweek;

(c)      whether Defendants misclassified Plaintiffs and the Colorado Rule 23 Class as independent contractors; and

(d)      the nature and extent of class-wide injury and the measure of damages for those injuries.

84. Plaintiffs' claims are typical of the claims of the Colorado Rule 23 Class which they seek to represent.

85. Plaintiffs and all the Colorado Rule 23 Class members work, or have worked, for Defendants as delivery drivers.

86. Plaintiffs and the Colorado Rule 23 Class members enjoy the same statutory rights under the Colorado Wage Laws, including to be paid for all hours worked and to be paid overtime wages. Plaintiff and the Colorado Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the Colorado Wage Laws. Plaintiffs and the Colorado Rule 23 Class members have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

87. Plaintiffs will fairly and adequately represent and protect the interests of the  members of the Colorado Rule 23 Class.  Plaintiffs understands that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately.   Plaintiffs recognize that as class representatives, they must represent and consider the interests of  the class just as they would represent and consider their own interests.  Plaintiffs understand that in  decisions regarding the conduct of the litigation and its possible settlement, they must not favor their   own interests over the class.  Plaintiffs recognize that any resolution of a class action must be in  the best interest of the class. Plaintiffs understand that in order to provide

adequate  representation, they must be informed of developments in litigation, cooperate with class counsel,  and testify at deposition and/or trial.  Plaintiffs have retained counsel competent and experienced in   complex class actions and employment litigation. There is no conflict between Plaintiffs and the  Colorado Rule 23 members.

88. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Colorado Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the Colorado Wage Laws, as well as their common policies, practices, and procedures.  Although the relative damages suffered by individual Colorado Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual plaintiffs lack the financial resources to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

89. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## PLAINTIFF PYRILIS'S HARASSMENT ALLEGATIONS

90. In late 2016 or early 2017, an OrderUp customer named Kirk Furguson exposed his genitals to Plaintiff Pyrilis during multiple deliveries.

91. Plaintiff Pyrilis complained about this behavior to Ashley Marcus, an employee of OrderUp with supervisory authority over Plaintiff Pyrilis.

92. Despite Plaintiff's Pyrilis's complaint, OrderUp failed to take any action against Mr. Ferguson that would have prevented him from ordering through OrderUp's app.

93. On February 8 2017, Ferguson exposed himself to Plaintiff Pyrilis again. Realizing that OrderUp would not protect her, Plaintiff Pyrilis reported Ferguson to the police.

94. On February 9, the Loveland Police Department issued Ferguson a citation for indecent exposure.

95. On August 1, Ferguson was sentenced to 150 days in jail and ordered to register as a sex offender on the charge of attempted indecent exposure.

96. After reporting Ferguson to the police, Plaintiff Pyrilis reached out to OrderUp for help resolving the situation, Dan Carr, OrderUp's Driver Acquisition and Compliance Manager responded saying that if it happened again, he would make sure to ban the customer.

97. On September 8, Pyrilis was again sent to Ferguson's address with a delivery.

98. After the September 8 incident Plaintiff Pyrilis complained to her supervisors at OrderUp again about being asked to make deliveries to Ferguson's address.

99. On March 31, 2018, Pyrilis again received an order for Ferguson at the same address.

100. On April 4, Kristin Latter, Senior Franchise Market Manager for OrderUp Inc. contacted Pyrilis to investigate her complaints. On April 5, 2018, Pyrilis received an invitation for a groupon.zoom.us phone meeting from juhenderson@groupon.com. The invitation also included krilatter@groupon.com. Pyrilis had the phone meeting with Ms. Latter and another person on April 5, 2018. During the call, Ms. Latter apologized to Pyrilis and told her Groupon would ban the address from deliveries. Ms. Latter further stated that "we don't want any of our drivers to have a problem."

101. Plaintiff has not received a right to sue letter from either the EEOC or CCRD regarding the harassment charges. She intends to amend her complaint to add claims for relief relating to the harassment once she receives them.

## PLAINTIFF PYRILIS'S RETALIATION ALLEGATIONS

102.    On October 27, 2017, Plaintiff Pyrilis filed charges of discrimination against Dream Concepts, LLC and OrderUp, Inc with the EEOC alleging sexual harassment due to the actions of Ferguson and the failure to address those actions by Pyrilis's employers. These charges were assigned Charge Nos. 541/2018-00212 and 541/2018-00209.

103.    After receiving the charges of discrimination, Dream Concepts and OrderUp, Inc. has treated Plaintiff Pyrilis differently by scheduling her for less desirable times and by manually assigning her to less desirable orders while she is working.

104.    As a result of the retaliation by Dream Concepts and OrderUp, inc., Pyrilis has earned less money per shift and per week than she earned before complaining about sexual harassment at the hands of Dream Concepts, LLC and OrderUp, Inc.

105.    In addition, on March 31, 2018, Plaintiff Pyrilis was assigned to an order from Ferguson again despite Dream Concepts, LLC and OrderUp, Inc. having the ability to ban him and his address from the app.

106.    When Plaintiff Pyrilis asked her supervisor to withdraw Ferguson's order from her without penalty, the supervisor responded that Pyrilis would have to reject the order. This had the effect of decreasing Pyrilis's reliability score for the next scheduling period.

107.    In fact, OrderUp did have the power to remove the order from Pyrilis without penalty.

108.    In light of this retaliation, Pyrilis filed charges of discrimination with the Colorado Civil Rights Division for both Dream Concepts, LLC and OrderUp Inc.  These charges were assigned Charge Nos. 32A/2018-00225 and 32A/2018-00226.

109.    Plaintiff has not received a right to sue letter from either the EEOC or CCRD regarding the retaliation charges. She intends to amend her complaint to add claims for relief relating to the retaliation once she receives them.

### FIRST CLAIM FOR RELIEF
### (Violation of FLSA's Overtime Provisions
### by Plaintiff Pyrilis and Collective Members against all Defendants)

110.    All above allegations are incorporated into this claim for relief.

111.    Plaintiffs and Collective Members are covered by FLSA.

112.    Plaintiffs and Collective Members were employees of Defendants within the meaning of the FLSA.

113.    At all relevant times, Plaintiffs and the Collective Members were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

114.    At all relevant times, each Defendant has been an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

115.    The overtime wage provisions set forth in the FLSA apply to Plaintiffs and the Collective Members.

116.    Plaintiff Pyrilis and Collective Members worked more than 40 hours in a work week at least once during their employment with Defendants.

117.    Defendants did not pay Plaintiff Pyrilis and Collective Members time-and-a-half for hours worked in excess of 40 in a work week.

118.    Defendants knew that or acted with reckless disregard as to whether their failure to pay Plaintiffs and the Collective Members the full applicable overtime wage over the course of their employment would violate federal law, and Defendants were aware of the FLSA overtime

wage requirements during Plaintiff's and the Collective Members' employment. As such, Defendants' conduct is a willful violation of the FLSA.

119.    Plaintiff Pyrilis and the Collective Members are therefore entitled to compensation for the full overtime wage, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**SECOND CLAIM FOR RELIEF**
**(Violation of FLSA's Minimum Wage Provisions**
**by Plaintiffs Pyrilis and DeMott against all Defendants)**

120.    All above allegations are incorporated into this claim for relief.

121.    Plaintiffs and Collective Members are covered by FLSA.

122.    Plaintiffs and Collective Members were employees of Defendants within the meaning of the FLSA.

123.    The minimum wage provisions set forth in the FLSA apply to Plaintiffs and the Collective Members.

124.    Plaintiffs and Collective Members incurred expenses in the course and scope of their employment with Defendants that were for the primary benefit of Defendants.

125.    Plaintiffs and Collective Members were not reimbursed for the above expenses.

126.    Taking account of the above expenses and overtime, Plaintiffs and Collective Members were paid less than minimum wage.

127.    Defendants knew that or acted with reckless disregard as to whether their failure to pay Plaintiffs and the Collective Members the full applicable minimum wage over the course of their employment would violate federal law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's and the Collective Members' employment. As such, Defendants' conduct is a willful violation of the FLSA.

128.    Plaintiffs and the Collective Members are therefore entitled to compensation for the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

### THIRD CLAIM FOR RELIEF
**(Violation of CWCA and Minimum Wage Order's Overtime Provisions by Plaintiff Pyrilis against Defendants Dream Concepts, LLC, Orderup Inc., and Groupon, Inc.)**

129.    All above allegations are incorporated into this claim for relief.

130.    Plaintiffs and the Colorado Rule 23 Class are covered by the Colorado Wage Laws.

131.    Plaintiffs and the Colorado Rule 23 Class are employees of Defendants within the meaning of CWCA and the Minimum Wage Order.

132.    The overtime wage provisions set forth in the Colorado Wage Laws apply to Plaintiffs and the Collective Members.

133.    Plaintiffs and the Colorado Rule 23 Class worked more than 40 hours in a work week at least once during their employment with Defendants.

134.    Defendants did not pay Plaintiffs and the Colorado Rule 23 Class time-and-a-half for hours worked in excess of 40 in a work week.

135.    Defendants knew that or acted with reckless disregard as to whether their failure to pay Plaintiffs and the Collective Members the full applicable overtime wage over the course of their employment would violate state law, and Defendants were aware of the Colorado Wage Laws' overtime wage requirements during Plaintiff's and the Collective Members' employment. Defendants' violation of the Wage Claim Act was willful under C.R.S. § 8-4-109(3)(c).

136.    Plaintiffs and the Collective Members are therefore entitled to compensation for the full overtime wage, to be proven at trial, plus penalties under C.R.S. § 8-4-109, together with interest, reasonable attorney's fees, and costs.

**FOURTH CLAIM FOR RELIEF**
**(Violation of CWCA and the Minimum Wage Order's Minimum Wage Provisions**
**by Plaintiffs Pyrilis and DeMott**
**against Defendants Dream Concepts, LLC, Orderup Inc., and Groupon, Inc.)**

137.    All above allegations are incorporated into this claim for relief.

138.    Plaintiffs and the Colorado Rule 23 Class are covered by CWCA and the Minimum Wage Order.

139.    The minimum wage provisions set forth in the Colorado Wage Laws apply to Plaintiffs and the Collective Members.

140.    The applicable minimum wage per hour under CWCA and the Minimum Wage Order for Plaintiffs and the Colorado Rule 23 Class was $8.23 in 2015, $8.31 in 2016, $9.30 in 2017, and $10.20 in 2018.

141.    Plaintiffs and the Colorado Rule 23 Class were employees of Defendants within the meaning of the CWCA.

142.    Plaintiffs and the Colorado Rule 23 Class incurred expenses in the course and scope of their employment with Defendants that were for the primary benefit of Defendants.

143.    Plaintiffs and the Colorado Rule 23 Class were not reimbursed for the above expenses.

144.    Taking account of the above expenses and overtime, Plaintiffs and the Colorado Rule 23 Class were paid less than the applicable minimum wage under CWCA and the Minimum Wage Order.

145.    Even without the above deductions for expenses, Plaintiffs and the Colorado Rule 23 Class were paid less than the applicable minimum wage under CWCA and the Minimum Wage Order.

146.    Defendants knew that or acted with reckless disregard as to whether their failure to pay Plaintiffs and the Collective Members the full applicable minimum wage over the course of their employment would violate state law, and Defendants were aware of the Colorado Wage Laws' minimum wage requirements during Plaintiff's and the Collective Members' employment. Defendants' violation of the Wage Claim Act was willful under C.R.S. § 8-4-109(3)(c).

147.    Plaintiffs and the Collective Members are therefore entitled to compensation for the full minimum wage, to be proven at trial, plus penalties under C.R.S. § 8-4-109, together with interest, reasonable attorney's fees, and costs.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.    That Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all similarly situated drivers who worked at any time from May 10, 2015 to the date of this Court's issuance of court-supervised notice for Defendants in Northern Colorado performing restaurant delivery services using the OrderUp mobile app. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit;

B.    Certification of the Colorado state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procured and Colorado Wage Laws;

C.    Designation of Plaintiff as a Class Representative and counsel of record as Class Counsel;

D.    Unpaid overtime wages and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

E.    Unpaid overtime pay and penalties pursuant to the Colorado Wage Laws;

F.    Prejudgment and post-judgment interest;

G.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Colorado Wage Laws;

H.    An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein;

I.    A reasonable incentive award for Plaintiffs to compensate them for the time they spent attempting to recover wages for FLSA Collective and the Colorado Rule 23 Class members and for the risks they took in doing so;

J.    Reasonable attorneys' fees and costs of the action; and

K.    Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated: May 10, 2018

*/s/ Sam Cannon*
Sam Cannon
Cannon Hadfield Stieben & Doutt, LLC
3534 John F. Kennedy Pkwy., Ste. B
Fort Collins, CO 80525
(970) 689-3037
scc@cannonlaw.com

*/s/ J. Bennett Lebsack*
J. Bennett Lebsack
Lowrey Parady, LLC
1725 High St., Suite 1
Denver, CO 80218
Phone: (303) 593-2595
Fax: (303) 502-91919
ben@lowrey-parady.com

<u>Plaintiff's Address</u>:
2739 West 36th Street
Loveland, CO 80538